882 F.2d 344
 FEDERAL TRADE COMMISSION, Plaintiff-Appellee,
v.
WORLD WIDE FACTORS, LTD., a Nevada corporation, d/b/a
Nationwide Printing, and Printers Clearing House; David E.
Williams, individually and as an officer, director, and sole
shareholder of World Wide Factors, Ltd., Defendants-Appellants.
 Nos. 88-15143, 88-15326.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1988.
Decided April 21, 1989.
As Amended on Denial of
Rehearing Aug. 10, 1989.
 
 Claude M. Stern, Nossaman, Guthner, Knox & Elliott, San Francisco, Cal., for defendants-appellants.
 Leslie Rice Melman, F.T.C., Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Nevada.
 Before FLETCHER, BEEZER and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 World Wide Factors, Ltd. ("World Wide" or "appellants"), operated by David E. Williams, president and sole shareholder, sold advertising specialty items through telemarketing and conducted sham prize give-away promotions. World Wide informed consumers that they had won a substantial prize, required consumers to pay a processing fee, and advised them that if they bought products from World Wide the prize would be exempt from federal income tax. Consumers never received the promised prizes, only the opportunity to purchase goods.
 
 
 2
 On March 3, 1988, Williams pleaded guilty to a criminal indictment for conspiracy, mail fraud, and wire fraud. Williams agreed to discontinue all telemarketing sales, to liquidate and to dissolve World Wide, to pay $942,773 in restitution to 12,995 customers, and to pay $324,661 to 1,034 consumers who filed complaints with the Postal Inspection Service.
 
 
 3
 The Federal Trade Commission ("FTC") filed this civil action alleging violation of the FTC Act, 15 U.S.C. Sec. 45 (1982), and seeking various remedies including restitution. The FTC moved for a temporary restraining order and a preliminary injunction to freeze all of Williams' and World Wide's assets. The FTC intended the preliminary injunction to preserve World Wide's assets for distribution to consumers and to prohibit World Wide from transferring or converting the assets in the event it prevailed on the merits. The court entered a temporary restraining order ("TRO") pending the hearing on the preliminary injunction.
 
 
 4
 After the subsequent evidentiary hearing, the court entered a preliminary injunction under 15 U.S.C. Sec. 53(b) which (1) prohibited appellants from continuing their promotions, and (2) froze their assets except an allowance for Williams' living expenses, attorney fees limited to the rates of $90 and $40 per hour, and other minor expenses. Furthermore, the court ordered Williams to transfer foreign funds to an institution within the district of Nevada. Sua sponte, it also appointed a special master to determine which disbursements were necessary and reasonable in order to carry out the terms of the preliminary injunction. A magistrate was assigned to supervise disbursements made by the special master.
 
 
 5
 World Wide moved to dissolve or, in the alternative, to modify the preliminary injunction by exempting other businesses owned by Williams, increasing the allowance for attorney fees for out of state counsel and releasing funds for expert witnesses, bankruptcy counsel and counsel for other actions. The court deferred ruling on the motion until appointment of the special master. Two subsequent orders defined the role of the special master and established procedures for requesting disbursements and judicial review. World Wide now appeals the asset freeze, the limitation on expenditures for attorney fees, and the scope of the special master's powers.
 
 
 6
 * Opportunity to Object to Form of Injunction
 
 
 7
 World Wide first contends that the district court abused its discretion by not giving World Wide an opportunity to object to the government's proposed findings before they were adopted by the court and made part of the preliminary injunction. World Wide relies on Chicopee Manufacturing Corp. v. Kendall Co., 288 F.2d 719 (4th Cir.), cert. denied, 368 U.S. 825, 82 S.Ct. 44, 7 L.Ed.2d 29 (1961). Chicopee, however, holds only that a party cannot prepare the court's opinion. See id. at 724.
 
 
 8
 The record reveals that the district court did not adopt the government's findings without first hearing testimony from both parties. The district judge requested the FTC to submit the proposed findings of fact and conclusions of law at the hearing. World Wide was present and did not object. Failure to object precludes judgment for World Wide on appeal.
 
 II
 Propriety of Injunctive Relief
 
 9
 World Wide next contends that the injunction was improper under section 13(b) of the FTC Act, 15 U.S.C. Sec. 53(b). Pursuant to 15 U.S.C. Sec. 53(b), the district court is required (i) to weigh equities; and (ii) to consider the FTC's likelihood of ultimate success before entering a preliminary injunction. Harm to the public interest is presumed. United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 175-76 (9th Cir.1987).
 
 
 10
 (i) Weighing of Equities
 
 
 11
 World Wide contends that the district court considered only public hardship when it weighed the equitable factors. The court's findings of fact and conclusions of law, however, demonstrate a balancing of both public and private interests. The district court expressly provided in the injunction for payment of the appellants' and third partys' expenses. The court also stated "there is no oppressive hardship to defendants in requiring them to comply with the FTC Act, refrain from fraudulent representation or preserve their assets from dissipation or concealment." The district court further supported its finding that the balance of hardships favors the public interest because (1) Williams was convicted for the criminally fraudulent activities alleged in the FTC's complaint; (2) over 100,000 consumers paid $69 to $79 for the World Wide prize scheme and may be entitled to restitution; (3) appellants agreed to cease their unlawful activities; and (4) the FTC's claim for restitution may exceed World Wide's assets. We have previously held that when a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight. Federal Trade Comm'n v. Warner Communications, Inc., 742 F.2d 1156, 1165 (9th Cir.1984) (citations omitted). Public equities include, but are not limited to, economic effects and pro-competitive advantages for consumers and effective relief for the commission. Id.
 
 
 12
 Our perusal of the record indicates that the district court's weighing of equities was not clearly erroneous.
 
 
 13
 (ii) Probable Success on the Merits
 
 
 14
 "Because irreparable injury must be presumed in a statutory enforcement action, the district court need only to find some chance of probable success on the merits." Odessa, 833 F.2d at 176. Here, there was an evidentiary hearing in which the district court found that World Wide and Williams have continued to engage in deceptive trade practices. Indeed, the district court found that Williams and others associated with World Wide are attempting to continue their fraudulent activities through another business. Appellants' attempts to engage in further fraudulent activity are sufficient to establish probability of success on the merits. Cf. Federal Trade Comm'n v. Evans Prods. Co., 775 F.2d 1084, 1087 (9th Cir.1985) (FTC cannot base its request for injunctive relief under Sec. 13(b) on evidence of past violations).
 
 
 15
 Since the FTC has shown a probability of success on the merits, the district court did not abuse its discretion in granting the injunction to freeze World Wide's assets.
 
 III
 Sixth Amendment Claim
 
 16
 Appellants erroneously contend that they are entitled to a sixth amendment right to appointed counsel because the Department of Justice may bring an additional indictment. The sixth amendment only gives defendants the right to counsel in criminal proceedings. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). The FTC action is not linked to any criminal prosecution. Since no such prosecution is pending, their argument fails.
 
 IV
 Reasonable Attorney Fees
 
 17
 Appellants also argue that the attorney fees limitation established by the court is unreasonable. Courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees. See Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc., 700 F.2d 1279 (9th Cir.1983) (court ordered law firm to return attorney fees paid from assets frozen because of the client's violation of commodities future trading regulations). Any doubt as to the constitutionality of freezing assets and precluding entirely their use for payment of attorney fees in circumstances even more extreme than this case have now been resolved by the Supreme Court's recent decision in United States v. Monsanto, --- U.S. ----, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) and Caplan & Drysdale, Chartered v. United States, --- U.S. ----, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989).
 
 
 18
 Here, the question is whether the court's $90 and $40 per hour rate limitation is warranted by the record. At best, the record is incomplete. To the extent the $90 and $40 per hour rates may have been based upon fees allowable for criminal defense attorneys or allowable under the Criminal Justice Act, such findings were arbitrary and an abuse of discretion. We vacate that part of the injunction which established such fee limitations and remand this determination to the district court with instructions to reconsider whether any hourly rate limitation for attorney fees is necessary in light of the provision of paragraph XI of the district court's order that World Wide "shall be permitted to withdraw reasonable sums for attorneys fees."
 
 
 19
 If the district court on remand decides to set a maximum hourly rate for attorney fees it should do so on the basis of the factors outlined in Kerr v. Screen Extras Guild, 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). If, out of concern for preserving funds for ultimate distribution to defrauded customers, the district court wishes to limit the amount by which the frozen funds may be invaded for payment of attorney fees, it should set a maximum total sum which may be withdrawn or it should establish the minimum size to which the otherwise frozen assets may be reduced based upon appropriate findings. See Federal Savings & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 564-65 (5th Cir.1987).
 
 V
 Special Master as Receiver
 
 20
 World Wide next contends that the duties imposed on the special master transformed him into a "receiver" for certain purposes. See Securities Exch. Comm'n v. Hardy, 803 F.2d 1034 (9th Cir.1986). In Gulf Refining Co. v. Vincent Oil Co., 185 F. 87, 89-90 (5th Cir.1911), a receiver was defined as one who "take[s] possession of and preserves, pendente lite, and for the benefit of the party ultimately entitled to it, the fund or property in litigation...." Id. Here, the district court ordered the master to "account for and preserve the assets, so that they will be available at the time of trial to satisfy the claims against defendants should defendants be liable." Thus, the master's responsibilities meet the Gulf definition of receiver.
 
 
 21
 World Wide notes that the district court did not follow the local rule that a bond must be posted and stringent reporting requirements must be set for receivers. Therefore, we remand to the district court to require posting of a bond and to set stringent reporting requirements as required for receivers by the local rules. The district court did not abuse its discretion in appointing the special master. Hardy, 803 F.2d at 1037 (district court has broad and wide powers to determine relief in an equity receivership).
 
 
 22
 World Wide also contends that the special master should not be permitted to liquidate World Wide's assets. World Wide's contention that payment of third party creditors is irrelevant to the FTC's claim is meritless. The FTC has authority to freeze assets under 15 U.S.C. Sec. 53(b) and the stated purpose of the injunction is to redress consumers' losses and prohibit disgorgement of profits. In the order of reference, the court stated that the purpose of the injunction is to "[f]reeze the defendants assets, account for the assets and preserve the assets so they will be available at the time of trial to satisfy claims against the defendant's." The district court was only considering the appellants' hardships when he allowed some disbursement of funds to the appellant and his creditors prior to trial. The court was not liquidating the appellants' business or estate. Therefore, the disbursements are acceptable and may continue when the master satisfies the local requirements of a receiver.
 
 CONCLUSION
 
 23
 We affirm the grant of the injunction. We remand this case to the district court with instructions to require the special master to post a bond and to follow other local rules applicable to a receiver. We vacate that part of the injunction which established a $90 and $40 per hour fee limitation for appellants' attorney and remand for further proceedings in accordance with the opinion.
 
 
 24
 AFFIRMED in part, VACATED in part and REMANDED.