**ARIZONA REHABILITATION HOSPITAL, INC., d/b/a Novacare Valley of the Sun Rehabilitation Hospital, et al., Plaintiff,**

v.

**Donna SHALALA, Ph.d., Secretary, Department of Health and Human Services, Defendant.**

**No. Civ.97–1305 PHX ROS (VAM).**

United States District Court, D. Arizona.

Nov. 13, 1998.

Karen Carter Owens, Coppersmith Gordon Schermer Owens & Nelson, Phoenix, AZ, Ronald N. Sutter, Powers Pyles Sutter & Verville, Washington, DC, for plaintiff.

Asst. U.S. Atty. Ann Elizabeth Harwood, United States Attorney's Office, Phoenix, AZ, for defendant.

## ORDER

MATHIS, United States Magistrate Judge.

### BACKGROUND

Plaintiffs, eight health care institutions, provide rehabilitation care and furnish services under Medicare. Medicare traditionally allowed providers reimbursement for the reasonable cost of furnishing services to Medicare recipients. Under provisions first enacted in 1972, health care providers like Plaintiffs were permitted reimbursement for the lower of their costs or charges ("LCC"). This provision did not specify the time period used for determining the LCC, but legislative reports stated that the LCC principle should not be used to penalize Medicare providers for short-range discrepancies between costs and charges. As a result, in 1974, a regulation was enacted which allowed providers to carry forward reasonable costs disallowed in a particular year to succeeding years.

Although refined and adjusted over the next fourteen years, the LCC carry-forward regulations were repealed in 1988. Plaintiffs assert this change has damaged them and contend that repeal of the LCC carry-forward provisions is illegal. (Doc. 1).

The present discovery dispute arises out of Plaintiffs' request for production of documents and Defendant's motion for a protective order. Plaintiffs requested various documents from Defendant including the complete administrative record. Defendant produced certain documents and moved for a protective order on others arguing they are covered by the deliberative process privilege and attorney-client privilege. (Docs.17, 26, 31, 41). On August 26, 1998, the Honorable Roslyn O. Silver referred this matter to the Magistrate Judge to "resolve the applicability of the privilege." (Doc. #38). The matter is now fully briefed, the *in camera* documents were filed and have been reviewed thoroughly by the Magistrate Judge.

### DISCUSSION

The parties agree this case is governed by the judicial review section of the Administrative Procedures Act (APA) found at 5 U.S.C. § 701, et. seq. The APA does not provide for a *de novo* proceeding but rather a review of the record. 5 U.S.C. § 706. Therefore, arguments regarding what constitutes the administrative rulemaking record are related to the claims of privilege by Defendant and claim of entitlement to production by Plaintiff.

Defendant contends that, in response to Plaintiffs' discovery requests, she has provided "the rulemaking record for the challenged regulations, and other non-privileged documents related to issuance of the regulations." (Doc. 17 at p. 1). Defendant asserts that the rulemaking record includes "Federal Register documents, public comments, and other material considered and relied upon by the Agency in the course of eliminating the carryover provisions of the LCC." (Doc. 17 at pp. 1–2). However, Defendant objects to production of certain documents arguing the items contain "the advice, opinions, and recommendations on legal policy issues that were provided by the Agency's attorneys and other staff as the challenged regulations were being developed." (Doc. 17 at p. 2). Defendant states that such documents are protected by the deliberative process privilege and, in some instances, the attorney-client privilege. Further, Defendant contends that "internal, confidential documents that would reveal the internal workings of the Agency's deliberative process and its communications with agency counsel are not

required to be included in the rulemaking record." (Doc. 17 at p. 2).

Plaintiffs oppose the motion for protective order arguing the withheld documents are not covered by the deliberative process privilege and, even if privileged, the privilege is not absolute and they have established their need for the documents since they are part of the administrative record. Plaintiffs also argue that documents to and from legal counsel are not covered by the attorney-client privilege since Defendant's lawyers were acting as administrators not legal counsel to the agency. Further, Plaintiffs argue Defendant has not made the proper showing of the confidential nature of the documents. (Docs.23, 33, 40).

## A. Law Generally

### 1. Administrative Record

The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action ... is entitled to judicial review thereof." 5 U.S.C. § 702. Section 704 of that title states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Judicial review is permitted to providers under the Medicare statute for review of final decisions of the Provider Reimbursement Review Board such as in the case at bar. 42 U.S.C. § 1395oo(f).

■ In reviewing agency actions, such as those challenged by Plaintiffs, the APA states that the Court "shall review the whole record or those parts of it cited by a party".[1] 5 U.S.C. § 706. Thus, "[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." Walter O. Boswell Memorial Hospital v. Heckler, ("Boswell"), 749 F.2d 788, 792 (D.C.Cir.1984).[2] Likewise, this Circuit has concluded that " 'the "whole" administrative record ... consists of all documents and

materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position.' " Thompson v. United States Department of Labor, 885 F.2d 551, 555 (9th Cir.1989) (quoting Exxon Corp. v. Department of Energy, 91 F.R.D. 26, 33 N.D.Tex.1981) (emphasis in original).

■ Further, in Portland Audubon Society v. The Endangered Species Committee, 984 F.2d 1534 (9th Cir.1993), the Ninth Circuit reiterated that 'the whole record, for purposes of 5 U.S.C. § 716, "includes everything that was before the Agency pertaining to the merits of its decision." Id. at 1548. In Portland Audubon there was a dispute regarding whether improper ex parte communications occurred during the formal rulemaking process. The dispute over the record concerned whether the record must be supplemented with these improper ex parte communications. Where, as in the instant case, "an agency [is] changing its course by rescinding a rule [it] is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." Motor Vehicle Manufacturer's Association of the United States v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 42, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). However, the Court may not substitute its judgment for the agency's and in reviewing for arbitrary and capricious decisions it must determine whether

> ... the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise ... We will, however, "uphold a decision of less than ideal clarity

1. A definition of the administrative or rulemaking record is not found in the definitions section of the Act. 5 U.S.C. § 701.

2. In Boswell v. Heckler, 749 F.2d at 792–3, the parties agreed that neither had submitted the

whole administrative record. The Government's submission was under-inclusive and Plaintiff's submission was over-inclusive. The Court cautioned against both these inaccuracies.

if the agency's path may reasonably be discerned."

463 U.S. at 43, 103 S.Ct. 2856.

In spite of this rather expansive view of what constitutes the "whole" record for purposes of APA review, exceptions based on claims of privilege are recognized. For instance, the *Portland Audubon Society* Court, though adopting a broad definition of the administrative record, also was careful to distinguish the facts before it from those in *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission ("Mothers for Peace")*, 751 F.2d 1287 (D.C.Cir.1984), *vacated in part*, 760 F.2d 1320 (D.C.Cir.1985) (en banc). In *Mothers for Peace*, the Plaintiffs had requested supplementation of the record "with pre-decisional transcripts and related documents from a meeting of the Nuclear Regulatory Commission." *Portland Audubon Society*, 984 F.2d at 1549. The Court distinguished the matter before it from the facts in *Mothers for Peace* because, unlike that case, "neither the internal deliberative processes of the agency nor the mental processes of agency members" were part of the information being sought by the Plaintiffs. *Portland Audubon Society*, 984 F.2d at 1549. Thus, the Court recognized, at least implicitly, privilege claims for certain materials based on "internal deliberative processes" or "mental processes of agency members."

Other cases have recognized such limits as well. In *Izaak Walton League of America v. Marsh*, 655 F.2d 346 (D.C.Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981), the Court stated that "[i]t is well established that an agency may claim a privilege with respect to documents that may have influenced a particular decision." *Izaak Walton League*, 655 F.2d at 370. However, the Court qualified this rule by stating "[w]e would not uphold the claim of privilege if failure to disclose ... would substantially impair the rights of [the parties challenging the agency action]." *Id.*

In addition, in *Coalition on Sensible Transportation, Inc. v. Dole*, 826 F.2d 60 (D.C.Cir.1987), the Court rejected an attempt by plaintiff to obtain discovery "tending to show that [the agency] failed to consider significant impacts." *Id.* at 72. The Court noted that "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Id.* (citing *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). The Court went on to hold that "[a]lthough plaintiffs here were entitled to introduce evidence tending to show significant impacts or realistic alternatives that the responsible officials ignored, (citations omitted), they were barred from inquiring into 'the mental process of administrative decisionmakers,' absent 'a strong showing of bad faith or improper behavior.'" *Coalition for Sensible Transportation*, 826 F.2d at 72.

Similar to these cases, Defendant in the instant case contends that all the additional documentation sought by Plaintiffs, and submitted for *in camera* review, is exempt from discovery and not part of the administrative record.[3]

### 2. Deliberative Process Privilege

Defendant contends that the additional documents now being sought by Plaintiffs are protected from release and inclusion in the administrative record by the "deliberate process" privilege. In *Jordan v. United States Department of Justice*, 591 F.2d 753, 772 (D.C.Cir.1978), the District of Columbia Circuit stated that "[o]ne of the traditional evidentiary privileges available to the Government in the civil discovery context is the common-sense, common-law deliberate process privilege." The Court went on to describe the nature and scope of the privilege as follows:

**3.** Plaintiffs argue this case is governed by *In Re Subpoena Duces Tecum*, 145 F.3d 1422 (D.C.Cir. 1998) and because the Agency's intent is at issue the deliberative process privilege is unavailable to Defendant. The Magistrate Judge finds that because of the nature of the review under the APA, the Agency's intent is not the focus of the

> Court's review and the case itself sets out the purpose of the privilege as "... to foster government decisionmaking by protecting it from the chill of potential disclosure." *In re Subpoena*, 145 F.3d at 1424. To find the privilege does not exist in this APA challenge would undermine the very basis for its existence.

This privilege protects the "consultative functions" of government by maintaining the confidentiality of "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." The privilege attaches to inter- and intra-agency communications that are part of the deliberative process preceding the adoption and promulgation of an agency policy.

*Jordan*, 591 F.2d at 772 (citations omitted). The *Jordan* Court listed three policy bases for the privilege: (1) it protects creative debate and candid consideration of alternatives within an agency, and thereby, improves the quality of agency decisions; (2) it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon; and (3) it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided not for matters they considered before making up their minds." *Id.* at 772–73; *see also Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980).

The Ninth Circuit has also recognized this privilege. *F.T.C. v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984) ("This privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated.") The Court held that two requirements must be met for application of the privilege: (1) the document must be predecisional—it must have been generated before the adoption of an agency's policy or decision; and (2) the document must be deliberative in nature, containing opinions, recommendations or advice about agency policies. "Purely factual material that does not reflect deliberative processes is not protected." *Warner Communications*, 742 F.2d at 1161 (citing *Coastal States*, 617 F.2d at 866); *see also Assembly of State of California v. U.S. Department of Commerce*, 968 F.2d 916, 920–21 (9th Cir. 1992).

■ This privilege, however, is a qualified one. A litigant may obtain deliberative materials "if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner Communications*, 742 F.2d at 1161. To make this determination, a court should consider the following: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the Government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *Id.* (citations omitted).

### 3. Attorney–Client Privilege

■ Defendant also argues certain of the documents in question are protected from discovery by the attorney-client privilege. The Ninth Circuit has laid out the following "essential elements" for assertion of the privilege:

(1) Where legal advice of any kind is sought,

(2) from a professional legal adviser in his capacity as such,

(3) the communication relating to that purpose,

(4) made in confidence,

(5) by the client,

(6) are at this instance permanently protected

(7) from disclosure by himself or by his legal adviser,

(8) unless the protection be waived.

*Admiral Insurance Co. v. United States District Court for the District of Arizona*, 881 F.2d 1486, 1492 (9th Cir.1989) (citing *In re Fischel*, 557 F.2d 209, 211 (9th Cir.1977), in turn citing 8 *Wigmore Evidence* § 2292 at p. 554 (McNaughton rev.1961)). Confidential communications from the attorney back to the client, in the form of advice, are also protected. *Upjohn Co. v. United States*, 449 U.S. 383, 392–3, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The burden of proof rests with the party asserting the privilege. *United States v. Blackman*, 72 F.3d 1418, 1423 (9th Cir.1995). Unlike the work product privilege, the attorney-client privilege is an abso-

lute privilege. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Courts have applied this privilege to communications between government agencies and their counsel as well. *See Coastal States,* 617 F.2d at 862 (recognizing privilege within context of requests for information made pursuant to the Freedom of Information Act ("FOIA")). In *In re Lindsey,* 148 F.3d 1100, 1104 (D.C.Cir.1998), the Court reaffirmed the rule stating:

> Courts, commentators, and government lawyers have long recognized a government attorney-client privilege in several contexts. Much of the law on this subject has developed in litigation about exemption five of the ... FOIA. *See* 5 U.S.C. § 552(b) (1994). Under that exemption, "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are excused from mandatory disclosure to the public.

■ As a result, if "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors," the privilege applies to those communications just as if the parties were private entities. *Coastal States,* 617 F.2d at 863; *see also In re Lindsey,* 148 F.3d at 1105. The *In re Lindsey* Court also noted the "proposed (but never enacted) Federal Rules of Evidence concerning privileges, to which courts have turned as evidence of common law practices, (citations omitted), recognized a place for a government attorney-client privilege." *Id.,* 148 F.3d at 1105. Critical to this showing, however, is a demonstration by the agency asserting the privilege "that confidentiality was expected in handling of [the] communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Coastal States,* 617 F.2d at 863.

### B. Review of the *In Camera* Documents

As part of the Court's consideration of this discovery dispute, the Magistrate Judge has (1) read all arguments submitted by the parties and related documents (Docs.15, 17–19, 22–24, 26–29, 31, 33, 38–41), (2) reviewed all documents submitted for *in camera* review (Doc. 20), (3) reviewed the affidavits invoking the privilege, together with the explanations of what the documents are and why the privilege has attached and remains in force (Docs. 17, 31 and 33), (4) reviewed the "administrative record" (Doc. 4), and (5) reviewed the proposed rule filed with the Court on October 15, 1998. The Magistrate Judge would initially point out that Defendant's "Notice of Filing of Administrative Record" (Doc. 4) which purports to certify an administrative record is not the administrative record. Defendant contends that the rulemaking record consists of "Federal Register documents, public comments and other materials relied upon by the Agency in the course of eliminating the carry-over provisions in the LCC Regulations." (Doc. 17 at pp. 1 and 2). The Court notes Defendant's filing of the administrative record contains an attached certification that the "... documents attached constitute a true and accurate transcript of the official file as furnished by the Provider Reimbursement Review Board (PRRB). These documents are the records of the PRRB proceedings concerning NovaCare lower of costs or charges carryover groups request for expedited judicial review ..." Attached to the certification are letters. The certification does not include the "Federal Register documents" and it does not appear to contain the "public comments." Therefore, the Magistrate Judge would recommend to the District Court that Defendant be required to file and certify what they truly believe to be the administrative record. This is necessary because Document No. 4 is by Defendant's own statements not the "administrative record."

The documents submitted for *in camera* review are placed in three separate categories labeled A, B and C. The documents in Category A are, according to Defendant, "Health Care Financing Administration (HCFA) analytical documents regarding the proposed rule ... and drafts of that proposed rule." Category B documents are described by Defendant as "Health Care Financing Administration (HCFA) analytical

documents regarding the final rule ... and drafts of that proposed rule." Defendant claims the deliberative process privilege as to Category A and B documents. Category C documents are described by Defendant as "documents by and between HCFA and the DHHS Office of General Counsel, withheld pursuant to both the deliberative process privilege and the attorney-client privilege." (Doc. 20 at pp. 2, 14 and 20). The affidavit of Michael Hash, Deputy Administrator, Health Care Financing Administration, Department of Health and Human Services is attached to Document No. 17 and invokes the privilege and explains why the privilege is applicable to the withheld documents.

In completing the Magistrate Judge's *in camera* review, the Court has looked at each of the documents to establish (1) whether the description of the document contained in "Defendant's *In Camera* Supplemental Description of Privileged Documents" is consistent with the document itself, (2) whether the document appears to be a privileged document within the requirements of the deliberative process privilege and attorney-client privilege, (3) with regard to the deliberative process privilege, whether there is factual material which could be segregated from the deliberative process material and, lastly (4) whether Plaintiffs' need for the document outweighs the Government's interest in nondisclosure. After reviewing the *in camera* submission, the Court finds Defendant's supplemental description is accurate, the deliberative process privilege requirements are met on Category A, B and C documents (i.e. the documents are intra-agency, pre-decisional, deliberative in nature, and were created and maintained as privileged documents), the attorney-client privilege has been properly invoked regarding Category C documents (i.e. the documents are to and from legal counsel who are acting as legal counsel, seeking and obtaining legal advice regarding the proposed rule change, the statements were made in confidence and the documents have been maintained as privileged documents).

More specifically, the Category A documents consist of multiple drafts of different sections of the proposed rule with handwrit-

ten comments (most illegible) and some initial memos regarding the impact of changing the rule. The documents are extremely repetitive. The Category B documents consist of (post-publication of the proposed rule) documents from Agency personnel reviewing the comments, proposed rule, comments on the comments received after publication and some drafts of a final rule. The documents are mostly circulation forms with attached comments and/or revisions of the rule in handwritten form. There are multiple copies of drafts of a final rule. The Category C documents are correspondence and notes to and from HHS attorneys regarding the proposed changes in the regulation and the proposed rule for public comment. There are multiple copies of the same document to the Office of General Counsel and memos back from the Office of General Counsel with its opinions to the HHS personnel. A review of the documents makes it clear the lawyers are giving legal opinions regarding the proposed regulation change, i.e. the lawyers are not acting as administrators. Category C also contains memoranda from Agency personnel to other Agency personnel, further communicating, within the Agency, the attorneys' legal opinions regarding the proposed rule changes.

As to the Category C documents, the Court finds that all the elements of the attorney-client privilege have been established, the documents are covered by the attorney-client privilege, they are exempt from inclusion in the administrative record as a result of the privilege and should not be released. The Magistrate Judge finds that Defendant is entitled to a protective order as to the Category C documents.

As to the Category B documents, the Magistrate Judge finds that all documents, with the exception of those labeled B–1 and B–2, are properly covered by the deliberative process privilege and do not contain factual material which can be segregated and released. However, as to Documents B–1 and B–2, the Court finds there are factual summaries which may be released with minor redactions. As to Document B–1, the Court finds that this contains a factual recitation of a meeting in which health care provid-

ers were present. The Court further finds that the memo contains on Page 2 at Paragraph 3 material which is privileged. Therefore, as to Document B–1, the Court will order its release with the exception of Paragraph 3 on Page 2 which begins: "While it may be true that . . ." As to Document B–2, the Court finds it contains factual material which may be released subject to redaction of the last paragraph of the memo.

 As to Category A documents, the Court found factual recitations in Documents A–1, A–12, A–26, A–34, A–37, A–38 and A–44. Documents A–26, 34, 37, 38 and 44 are drafts of the proposed rule. Documents A–1 and A–12 are pre-decisional/pre-proposed rule, intra-agency documents discussing a draft of a proposed regulation. However, the factual material found in the above-listed documents, with one exception, is found in the proposed rule as published in the Federal Register. The Government's Amended Notice of Providing Court With Proposed Rule, filed October 15, 1998, attaches the proposed rule as published in the Federal Register. The factual data found in the above-described documents is found at Pages 33079, 33085 and 33086. The factual data is mostly summarized in Appendix 1 and Appendix 2 to the proposed rule. The only factual data that is not disclosed in the proposed rule is found in the last 15 pages of Document A–1. These last 15 pages are the actual worksheets regarding the information set forth in Appendix 2. These worksheets have the provider number, type, report period ended, current disallowance, prior recovery and a column for remarks. The remarks column is typically not filled out and does not appear to contain deliberative process material but rather factual comments on the particular sampling. These 15 sheets are easily segregable and contain purely factual data. Therefore, Defendant's request for a protective order regarding the last 15 pages of Document A–1 will be denied. All other documents contained in Category A are covered by the deliberative process privilege, and factual data in the documents is disclosed in the published proposed rule.

In summary, all of the documents in Category C are properly claimed as deliberative process and attorney-client privilege. These documents do not contain segregable factual material and, in any event, the attorney-client privilege is absolute and factual data would not be disclosed. The Category B documents are all properly the subject of the deliberative process privilege with the exception of Documents B–1 and B–2 which contain factual material which must be released after redaction. As to the Category A documents, they are properly the subject of a claim of the deliberative process privilege and do not contain undisclosed segregable factual material with the exception of the last 15 pages of Document A–1 which must be released to Plaintiffs.

The only remaining issue is whether, as to Category A and B documents, plaintiffs have shown their " . . . need for the materials and the need for accurate fact-finding override the Government's interest in non-disclosure." *Warner Communications,* 742 F.2d at 1161. Applying the four-part test of *Warner Communications,* the Magistrate Judge finds:

(1) The material is not highly relevant since it is predecisional drafts of portions of the Rule with, often illegible, handwritten comments of mostly unknown agency personnel. This material is not the agency's statement of what it will do and why.

(2) The proposed rule and final rule contain the Agency's decision and basis for that decision, including the factual support. These are the best evidence of the Agency's reason for the rule change and what was considered as part of the rule change.

(3) The Government's role in the litigation is primary since the Agency's actions are challenged in this APA suit.

(4) The Court is convinced the release of such material would hinder the Agency's future rulemaking ability as it would stifle "creative debate and candid consideration of alternatives" and undermine "the integrity of the decision-making process itself" since agency officials are to be judged by what they finally decided. *Warner Communications,* 742 F.2d at 1161; *Jordan,* 591 F.2d at 772. Such a free exchange of information and ideas is necessary to the rule-making process.

272

The Magistrate Judge finds that, with the exception of the factual material in Documents A–1, B–1 and B–2, Defendant has established the deliberative process privilege and Plaintiffs have not shown that their need, or the need for accurate fact-finding, override the Government's interest in the privilege.

IT IS THEREFORE ORDERED granting Defendant's Motion for Protective Order as to all documents in Category A with the exception of the last 15 pages of Document A–1.

IT IS FURTHER ORDERED granting Defendant's Motion for Protective Order with regard to the documents in Category B with the exception of Documents B–1 and B–2 which must be redacted and released.

IT IS FURTHER ORDERED granting Defendant's Motion for Protective Order with regard to all documents in Category C.

IT IS FURTHER ORDERED that Defendant may have ten (10) days to segregate and release those documents, and portions of documents, upon which the Court has denied Defendant's Motion for Protective Order.