**The Honorable Bobby D. YOUNGBLOOD, et al., Plaintiffs,**

v.

**Brad GATES, et al., Defendants.**

**No. CV 83–8148–RG(Gx).**

United States District Court, C.D. California.

Dec. 18, 1985.

Michael J. Cisarik, Santa Ana, Cal., Stephen Yagman, Yagman & Yagman, Los Angeles, Cal., for Youngblood, Wright and Bland.

Edward N. Duran, Deputy County Counsel, Santa Ana, Cal., John Butler, Portigal, Hammerton & Allen, Santa Ana, Cal., for Gates, Blair and Orange County.

David L. Hansen, Santa Ana, Cal., for Short.

Ernest C. Chen, Beam, DiCaro, D'Antony, Stafford & Brobeck, Santa Ana, Cal., for Wilder.

Jeffrey M. Epstein, Cotkin, Collins, Kolts & Franscell, Los Angeles, Cal., for City of Orange.

## RULING ON MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS AND FOR SANCTIONS

RALPH J. GEFFEN, United States Magistrate.

This is a discovery dispute regarding production of certain records of the Sheriff's Department of Orange County relating to an investigation targetting plaintiff Youngblood. It was referred to the undersigned United States Magistrate by District Judge Richard A. Gadbois, Jr. for reconsideration of the defendants' claim of privilege, upon the basis of which the requests were previously denied. All of the documents produced by defendants were received *in camera* for the Court's inspection, have been reviewed, and are the subject matter of this ruling.

### ISSUES

1. IS THERE EXECUTIVE PRIVILEGE, INVESTIGATIVE PRIVILEGE OR ANY OTHER TYPE OF PRIVILEGE INVOLVED?

2. SHOULD THE PRODUCTION BE ORDERED DESPITE THE CLAIMS OF PRIVILEGE?

## I. INTRODUCTION

Plaintiffs herein have sued under 42 U.S.C. § 1983. They claim that the defendants have deprived them of their civil rights by the use of surveillance, monitoring, covert operations and the use of civilian agents and informers. 42 U.S.C. § 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to "police" those who are charged with policing the populace. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden. *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D.Wisc.1972). The plaintiffs have requested the Court to compel discovery of documents and other sheriff's department materials necessary for them to establish their case.

The plaintiffs contend that disclosure will lead to "admissible evidence as to motive, intent, plan, prior knowledge of supervising personnel, absence of good faith, use of informants, identity of co-conspirators, and for purposes of cross-examination." *Stipulation of Parties*, at p. 3 (April 29, 1985).

The defendants' response, on the other hand, has included the following:

1. The documents, if they exist, have previously been produced in response to a previous Request for Production served by the plaintiffs on the defendants;

2. The documents, if they exist, are not in the possession of these responding defendants;

3. The documents, if they exist, are not relevant nor are they reasonably calculated to lead to the discovery of any admissible evidence;

4. The documents, if they exist, are privileged under existing federal law;

5. The documents, if they exist, have been previously deemed privileged by ruling of Magistrate Kronenberg, upheld by Judge Gadbois.

## II. THE FEDERAL RULES OF EVIDENCE REGARDING PRIVILEGE APPLY

 The present action was brought by plaintiffs under a federal statute, 42 U.S.C. § 1983, which was enacted to vindicate federal rights against deprivation by persons acting under color of state law. Although the state law of privilege may be persuasive, federal law controls a § 1983 action. *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 471, 62 S.Ct. 676, 685–86, 86 L.Ed. 956 (1942) (Jackson, J. Concurring).

"[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." *Heathman v. United States Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 1032, 1034 (9th Cir.1974). *See also Kerr v. United States*, 511 F.2d 192 (9th Cir.1975).

Thus in the case at bar, the federal rules regarding privilege will be applied.

## III. THE FEDERAL POLICY OF DISCOVERY IS A LIBERAL ONE

 Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Fed.R. Civ.P. 26(b)(1).

The scope of discovery in civil cases is extremely broad and relevancy objections, while permissible, will not be sustained where discovery sought is relevant to the subject matter. *Alliance To End Repression v. Rochford*, 75 F.R.D. 441 (N.D.Ill. E.D., 1977).

## IV. THE DEFENDANTS' CLAIM OF PRIVILEGE ENCOMPASSES VARIED FORMS OF PRIVILEGE

### A. THE "OFFICIAL INFORMATION" PRIVILEGE

The "official information" privilege is embodied in Article 5 of the Federal Rules of Evidence. Rule 501 provides, in pertinent part, that:

"... [T]he privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501.

When Article V was submitted to Congress, it contained thirteen rules. Nine of them defined specific nonconstitutional privileges which the federal courts must recognize, e.g., secrets of state and other official information. Many of these rules contained controversial modifications or restrictions upon the common law privileges. Congress, rather than engaging in extended debate over the codifying of federal common law, instead passed a single rule, 501, which provides that privileges will be governed by the principles of the federal common law as interpreted by federal courts in the light of reason and experience. *See* Fed.R.Evid. 501, Notes of Committee On The Judiciary, Senate Rept. No. 93–1277.

The defendants contend that discovery should not be allowed because the material sought is privileged under this "official information" privilege, designed to protect materials gathered during an "ongoing investigation."

While Rule 509 of the Proposed Rules of Evidence, (Secrets of State and Other Official Information), was not adopted by Congress, it serves as a useful guide and standard because it was intended to summarize existing case law defining the scope of the official information privilege. Under the rule the government has a *qualified* privilege to withhold information if it shows that there is a reasonable likelihood of dan-

ger that the evidence will disclose information within the custody of or control of a governmental department or agency and not otherwise available to the public pursuant to the Freedom of Information Act, 5 U.S.C. § 532, particularly intragovernmental opinions or policy-making functions, or investigatory files compiled for law enforcement purposes. Further, *the government must show that disclosure would be contrary to the public interest. See Peck v. United States,* 88 F.R.D. 65, 68–69 (D.C. S.D.N.Y.1980).

In analyzing whether the defendants' files are in fact protected by the privilege of an ongoing investigation, there must first be a formal assertion of that privilege. *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), is the starting point for any analysis of the procedures that must be followed in asserting executive information privilege.

*Reynolds* was an action for wrongful death brought against the United States under the Federal Tort Claims Act by the widows of three civilian observers killed in the crash of an Air Force plane testing secret equipment. The plaintiffs moved for production of the Air Force's official accident investigation report and the statements of the surviving crew members. The government objected, asserting privilege, which the court construed to be the privilege against revealing military and state secrets. The Court then stated:

> "The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a *formal claim* of privilege, *lodged by the head of the department* which has control over the matter, after *actual personal consideration* by that officer." 345 U.S. at 7–8, 73 S.Ct. at 532, 97 L.Ed. at 733 (footnotes omitted) (emphasis added). *See also Crawford v. Dominic,* 469 F.Supp. 260 (E.D.Pa.1979).

These procedural prerequisites have been applied to the official information privilege as well. *Kinoy v. Mitchell,* 67 F.R.D. 1

(S.D.N.Y.1975). (Procedurally, such claims of privilege ... must be lodged by the head of the agency concerned, after personal consideration of the material and evaluation of the risks of disclosure). *See United States v. O'Neill,* 619 F.2d 222, 226 (3rd Cir.1980).

In the instant case, there is no affidavit or declaration by Sheriff Gates that he personally reviewed the material for which the privilege is claimed, nor has he delineated in clear and precise terms why the confidentiality of the documents must be maintained.

■ Subordinate officials, i.e., Randy Blair and Undersheriff Ramos, cannot claim privilege in their depositions. "The purpose of this procedural requirement is to insure that subordinate officials do not lightly or mistakenly invoke the government's privilege in circumstances not warranting its application." *Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 882 (5th Cir.1981).

Further, the defendants here have indiscriminately raised the claim of privilege without specifying exactly what documents are privileged and why they are so privileged. "The indiscriminate claim of privilege may in itself be sufficient reason to deny it. The court when faced with such a claim cannot make a just or reasonable determination of its validity." *O'Neill, supra,* at 227.

## B. THE "ONGOING INVESTIGATION" PRIVILEGE

In addition to the official information privilege, the defendants are also claiming that discovery cannot be allowed because the documents sought are protected under the "ongoing investigation" privilege. It is the defendants' contention that production of such documents would hamper law enforcement efforts to obtain needed information. "Allowing plaintiffs behind the guise of a civil rights action to discover information obtained from an ongoing criminal investigation would be against public policy and would obviously deter law

enforcement and investigation." *See Stipulation of Parties,* at p. 26 (April 29, 1985).

In *United States v. Mackey,* 36 F.R.D. 431 (D.D.C.1965), counsel for the defendant filed a motion to require the local police department to produce records relating to its internal operations. In denying the motion, the court stated, "the records of law enforcement agencies ... are regarded as confidential and are not subject to public inspection...." The Court of Appeals held that *this was error.* "The Government may be requested to produce documents in its possession unless it makes a valid claim of privilege." *Mackey v. United States,* 351 F.2d 794, 795 (D.C.Cir.1965) (emphasis added).

In the instant case, the plaintiffs concede that there is a privilege for an ongoing investigation. But they argue that the privilege is a qualified one, should not be recognized in this case, and was not properly asserted by Sheriff Gates.

*Wood v. Breier, supra,* is illustrative of the approach taken in the majority of cases. *Wood* was brought under 42 U.S.C. § 1983 against the Milwaukee Police Department for financial and equitable relief. The plaintiff alleged that unknown policemen struck and arrested him without cause and that the police chief and members of the Police and Fire Commission were personally involved in a conspiracy to deprive the plaintiff of his constitutional rights by, *inter alia,* shielding the police officers involved from identification. The plaintiff sought to discover the file of an internal investigation made by the police department into the incident involving his beating. The court, before allowing discovery, conducted an *in camera* inspection of the file, which contained eyewitness reports and summaries of the interviews.

The court ordered production of the great bulk of the documents. To hold otherwise, the court stated, would be in conflict with two major federal policies, i.e., the vigorous enforcement of the civil rights statutes and the broadest possible scope of discovery in civil litigation. The court also stated, in language pertinent to the case at bar, the following:

"In the instant case the investigation has long since been completed, and there is no indication that any prosecution is contemplated. Second, while a privilege is generally recognized for intra- and inter-agency advisory opinions and recommendations submitted for consideration in the performance of decision and policy-making functions, if there is a need for discovery to preclude prejudice and unfairness ... a conditional executive privilege cannot stand in the way of necessary discovery." *Id.* at 12.

This case also raises the question of how long an ongoing investigation continues for purposes of applying this evidentiary privilege. If the files of ongoing investigations are not absolutely privileged, even less are they privileged when the investigation is completed.

In *Swanner v. United States,* 406 F.2d 716 (5th Cir.1969), the Fifth Circuit noted that "... while pendency of a criminal investigation is a reason for denying discovery of investigation reports, this privilege would not apply indefinitely...." *Id.* at 719. *See also Capitol Vending Co. v. Baker,* 35 F.R.D. 510 (D.C.Cir.1964) (the Department of Justice may not retain documents indefinitely and keep them from disclosure by claiming ongoing investigation; there must be a reasonable terminus).

■ In the instant case, the investigation of the plaintiffs was initiated almost three years ago and has failed to lead to an indictment by the Orange County Grand Jury. The documents and files presented for *in camera* inspection fail to prove that the investigation is still continuing, nor have defendants shown or even contended that the plaintiffs will have criminal charges brought against them as a result of the investigation already made. It is found that the investigation is no longer "ongoing." The reason for recognition of the privilege is therefore largely vitiated.

Defendants argue that to allow plaintiffs to discover information obtained from an ongoing investigation, behind the guise of a

civil rights action, would be against public policy and would deter effective law enforcement and investigation. This would be a sounder argument if there *was* an ongoing investigation. *See Kinoy v. Mitchell, supra,* at 11. Here, since the investigation is no longer ongoing, the consensus is that a litigant should be allowed access to law enforcement files as needed to develop his civil action. *See Capitol Vending Co. v. Baker, supra,* and *Wood v. Breier, supra.*

### C. THE PRIVILEGE OF AN INFORMANT

■ What is usually referred to as an "informer's privilege" is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information to officers charged with enforcement of that law. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

The defendant in *Roviaro,* before his trial, moved pretrial for a bill of particulars requesting, among other things, the name, address, and occupation of "John Doe." The government objected on the ground that John Doe was an informer and his identity was privileged. The motion was denied.

The Supreme Court disagreed with this invocation of privilege. Rather than allow the government an absolute privilege for informants, it recognized only a qualified privilege.

The Court then discussed the scope of the privilege. " ... [W]here the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." 353 U.S. at 60, 77 S.Ct. at 627, 1 L.Ed.2d at 644.

The Court further limited the privilege by stating, "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60–61, 77 S.Ct. at 628, 1 L.Ed.2d at 645.

■ In the instant case, two of the informers, Richard Wilder and Paul Collin, are known, so there can be no claim of privilege as to them. As to other informers used by the Sheriff's Department, if any, defendants have made no showing that a particular injury will occur if their identities are disclosed. The standard of review is a balancing of the plaintiffs' need for the information so that they may proceed with their case against the defendants' need to protect the identities of their informers. At this stage of the proceedings, plaintiffs need to discover in the prosecution of their civil rights case predominates over the nebulous danger surrounding disclosure of the informants in a moribund investigation.

### V. EFFECT OF THE PRIOR RULINGS

■ The defendants contend contend that the plaintiffs' motion should be denied because of the prior rulings of Magistrate Kronenberg and Judge Gadbois in which both denied plaintiffs' motion for production and held that the documents in question were protected by privilege.

According to *Moore's Federal Practice,* Vol. 1B, Paragraph 0.404 1: "Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." And like the doctrine of stare decisis, it serves the purpose of: "(1) protecting against the agitation of settled issue; and (2) assuring the obedience of inferior courts to the decisions of superior courts." *Id.*

In the instant case, Judge Gadbois determined that the issues presented deserved a redetermination at a later point in time. The prior holdings are over a year old. In the interim since the prior rulings, the defendants have not filed any criminal charges against the plaintiffs nor is there evidence that the investigation is still con-

tinuing. Even if the investigation was still continuing, that in itself would not bar discovery.

In *Philadelphia Resistance v. Mitchell,* 58 F.R.D. 139 (E.D.Pa.1972), the court was presented with the issue of whether to allow the plaintiff to proceed with interrogatories against the defendants, even though the information held by the government contained information designating the plaintiff as the subject of a valid continuing investigation for law enforcement purposes. The court, realizing that the government was the sole source of the information sought, allowed discovery to take place. "Although the plaintiffs certainly have no right to rummage through these files (citation omitted), they are entitled to certain information if disclosure of that information is necessary to presentation of their case and does not jeopardize the government's ongoing criminal investigation." *Id.* at 143.

Discovery of the contents of defendants' files regarding the old investigation will not jeopardize any strong governmental interest.

## VI. CONCLUSION

The plaintiffs have presented a strong case for the production of documents and things related to the alleged surveillance, monitoring and harassment of the plaintiffs by the Orange County Sheriff's Department.

Although some of the documents may be inadmissible at trial, they should nonetheless be discoverable at this stage of the litigation as they clearly relate to the subject matter of the lawsuit and the documents may lead to further admissible evidence at trial. 8 Wright and Miller, *Federal Practice and Procedure,* § 2008 at 41 (1970).

The Sheriff's Department, acting on tips received from informants, felt that an investigation into the activities of the plaintiffs was warranted. The investigation *may* have bordered on overzealousness and the plaintiffs' civil rights *may* have been violated. In order to determine if any rights were violated, public policy demands that both sides engage in the adversary process to determine the "truth." Preventing discovery would thwart the adversary process.

In this situation, the plaintiffs' interest in disclosure outweighs the government's interest in confidentiality. Public policy would seem to require disclosure for two reasons.

First, the public has an interest in assuring just and accurate adjudication of disputes. Overindulgence in governmental privileges might weaken public confidence in the ability of the judicial system to do justice where government is the defendant. Second, the public has an interest in preventing government malfeasance. Exposure of past wrongdoing might inhibit future abuses by government employees. *See* 2 *Weinstein's Evidence,* ¶ 509[07] (1975), and *Black v. Sheraton Corp. of America,* 371 F.Supp. 97, 107 (D.D.C.1974).

Plaintiffs' motion to compel production of documents, tapes, and photographs, etc., is granted. A protective order could be considered; none has been requested to date but a restriction on disclosure to the parties and attorneys only would be in order.

It is noted that defendants have failed to produce the jail record of Paul Collin. If the plaintiffs can prove that these or other requested documents were withheld by defendants, sanctions against the defendants would be appropriate. To date, no such showing has been made or attempted.

Plaintiffs are permitted to review the documents held by the Court at anytime after January 1, 1986, by pre-arrangement with the Magistrate's clerk, and to designate documents or other objects to be copied. Counsel shall promptly confer and arrange a mutually satisfactory procedure for such.

A copy of this Ruling shall be mailed by the clerk to all counsel, forthwith.