**T.W.A.R., INC., the Extension Connection, the Phone Works, and Dennis E. Love, Plaintiffs,**

**v.**

**PACIFIC BELL, et al., Defendants.**

**No. C–91–0573–SAW (JSB).**

United States District Court, N.D. California.

Sept. 10, 1992.

Richard D. Rosenberg, Alioto & Alioto, San Francisco, CA, Philip C. Jones, Merrifield, VA, for plaintiffs.

Steven D. Rathfon, Lisa A. Zinkan, San Francisco, CA, for defendants.

### ORDER RE PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

BRENNAN, United States Magistrate Judge.

On September 2, 1992, the court heard the motion of plaintiffs T.W.A.R., Inc. ("TWAR"), The Extension Connection ("TEC"), The Phone Works, and Dennis E. Love for an order compelling production of documents from defendant Pacific Bell. Plaintiffs appeared by their counsel Richard Rosenberg, and defendant appeared by

its counsel Lisa Zinkan. The court, having carefully considered the papers submitted and the arguments of counsel, and good cause appearing, hereby GRANTS plaintiffs' motion for the following reasons.

## BACKGROUND

This is an action for money damages and injunctive relief, alleging monopolization and attempted monopolization in violation of the Sherman Act, and for unfair competition and various business torts, under California law. For many years prior to the breakup of the Bell System in 1984, the parent company of Pacific Bell, American Telephone and Telegraph, had a monopoly in the market for telephone service in the United States, including long distance service and equipment service and repair. Commencing in 1987, the Federal Communications Commission deregulated the provision of inside wire installation and repair service by telephone utilities. ("Inside wire" refers to that portion of a customer's telephone wire located on the customer's side of the telephone service provider's equipment.) In line with this deregulation, telephone utilities were required to charge separately for inside wire services, and competing service providers were permitted to offer this service to consumers.

The FCC determined that the telephone utilities would be permitted to engage directly in the competitive, nonregulated business operations, but the FCC required that certain accounting mechanisms be established to assure that there was no cross-subsidization of competitive operations by monopoly-service ratepayers. In a 1987 order referred to as the "Joint Cost Order," the FCC provided two such accounting mechanisms. First, the Joint Cost Order required that the telephone utilities prepare and submit to the FCC a "Cost Allocation Manual." Second, the Order required that, in lieu of FCC staff audits, an independent auditor certify on an annual basis that the Cost Allocation Manual had been implemented in a manner consistent with regulatory requirements.

TEC began operations in 1985 in anticipation of the 1986 FCC and California Public Utility Commission deregulation orders. Almost immediately, TEC began accusing Pacific Bell of engaging in practices that made it impossible for TEC to compete in the inside wire service business. On March 18, 1988, plaintiffs entered into a release and covenant not to sue with Pacific Bell. As part of the agreement, Pacific Bell paid plaintiffs $175,000.

In February 1991, plaintiffs filed the complaint in this action against Pacific Bell and GTE. The complaint alleges the following counts against Pacific Bell: 1) violations of Sherman Act: a) below cost, predatory pricing of inside wire services; b) cross-subsidization of inside wire prices; c) denial of use of essential facilities (611 line and billing envelope); e) monopoly leveraging (yellow pages advertising support of Pacific Bell's inside wire services); f) abuse of monopoly power by predatory conduct (failing to list TEC in Pacific Bell's telephone directories); g) monopolization—further predatory acts (cutting off TEC's phone service, engaging in trade disparagement); h) unfair competition—SNI (standard network interface device) design and development; 2) state common law actions: a) breach of the covenant of good faith and fair dealing; b) intentional interference with prospective economic advantage.

## PLAINTIFFS' MOTION TO COMPEL

█ In this motion, plaintiffs request an order compelling Pacific Bell to produce 1) all documents relating to Pacific Bell's Access Tariff Filings with the FCC that pertain in any way to inside wire, including proprietary materials made available to the FCC in connection with the annual attestation audit reports, pursuant to the terms of the Joint Cost Order; and 2) documents dated from the period after plaintiffs ceased doing business (mid–1989) until the present, which plaintiffs claim are relevant to their claim for injunctive relief.

In April 1991, Pacific Bell objected to plaintiffs' first document request on the grounds that the documents contain competitive, marketing, financial, and other confidential and proprietary information protected from discovery, and that the doc-

uments are protected by privilege pursuant to the Federal Communications Act, and are further protected by the "federal common law audit privilege." Counsel subsequently agreed in May 1991 that Pacific Bell would produce responsive documents from a core set of inside wire documents spanning a time period from 1985 to the end of 1989. Plaintiffs served their second and third document requests in February 1992. Pacific Bell made the same objections to those requests as it had to the first request.

In response to this motion to compel, Pacific Bell contends that the requests are burdensome, that plaintiffs delayed in bringing this motion and should therefore be barred from obtaining relief. Pacific Bell argues that it has already produced a massive number of documents, that plaintiffs have procrastinated almost to the date of discovery cutoff (September 18, 1992) to make this motion, and that Pacific Bell will be substantially prejudiced by an order requiring a further massive document production in 15 days.

In addition, Pacific Bell argues that the requested documents contain trade secrets and competitive information on every aspect of Pacific Bell's inside wire service, and that the FCC filings are protected by the "federal common law audit privilege," the gist of which is that there should be a privilege for materials submitted to a government agency pursuant to a regulation of that agency, when those materials constitute "self-critical analysis"—i.e., negative self-evaluation.

Pacific Bell claims that there is substantial support for such a privilege in law review articles, and also cites *In re LTV Securities Litigation,* 89 F.R.D. 595 (N.D.Tex.1981), where, in discussing the issue of whether disclosure to the SEC waived attorney-client privilege, the court expressed its "intuitive" and "visceral" assessment that

it is likely that corporations will be less willing to engage in this sort of self-investigation if the results of such an investigation can be discovered in parallel civil litigation. If such discovery is

permitted, a corporation concerned about its exposure to civil liability would be more willing to risk SEC investigation, particularly in light of the exemption from public disclosure generally afforded the Commission's investigatory records.

89 F.R.D. at 619. The court commented further that "as an evolving society engenders new relationships, courts must consider whether interests are created that require some form of protection," adding in a footnote, "other courts dealing with the confidentiality of certain forms of corporate internal analyses have developed a 'self-evaluation' privilege. *See, e.g., O'Connor v. Chrysler,* 86 F.R.D. 211 (D.Mass.1980); *McClain v. Mack Trucks, Inc.,* 85 F.R.D. 53 (E.D.Pa.1979)." 89 F.R.D. at 621.

Pacific Bell also cites a 9th Circuit case, *Dowling v. American Hawaii Cruises, Inc.,* 971 F.2d 423 (9th Cir.1992), in which the court stated that although the 9th Circuit has not yet considered whether there exists a so-called privilege of self-critical analysis,

other courts have generally required that the party asserting the privilege demonstrate that the material to be protected satisfies at least three criteria: 'first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if the discovery were allowed.'

971 F.2d at 425–26. The court held that "no privilege of 'self critical analysis' protects routine internal corporate reviews of matters related to safety concerns," *id.,* but then stated that "[i]t may be unfair for a court to require a party to turn over to an opposing litigant self-damning assessments that the government has required it to prepare." *Id.*

Pacific Bell contends that "[h]ere, the annual certifications and the underlying studies in the audit materials are prepared by Pacific Bell pursuant to government compulsion, kept highly confidential, and

**108**

their disclosure to private litigants could well curtail the flow of the information, to the public's detriment." Therefore, Pacific Bell argues that this case is appropriate for the application of the self-critical analysis privilege.

Pacific Bell also objects to producing any documents dated after mid–1989, arguing that 1) the likelihood of plaintiffs' obtaining an injunction is not great, considering that neither the FCC nor the CPUC have acceded to plaintiffs' requests for such an injunction, and 2) in any event, plaintiffs do not need the additional documents to establish a basis for injunctive relief, particularly the relief they are requesting (order Pacific Bell to create a separate subsidiary for the delivery of inside wire services, order Pacific Bell to give TEC and other competitors access to its billing envelopes, order Pacific Bell to give TEC free advertising in its yellow pages and free access to the "611" repair number, order Pacific Bell to change the design of its SNI devices, order Pacific Bell not to violate any federal or state laws.)

 Regarding the documents relating to Pacific Bell's FCC filings, the court is not persuaded that this request is burdensome or that plaintiffs unduly delayed in filing their motion. The court finds it reasonable that Pacific Bell provide defendants with documents relating to FCC filings in which inside wire is a *central or significant issue*, including any supporting documents that were provided to the FCC in connection with the audits required by the Joint Cost Order. Regarding Pacific Bell's assertion of the self-critical analysis privilege, the court finds that Pacific Bell has failed to meet its burden of showing either the existence or the applicability of this privilege. The court notes, first, that the privilege has not been recognized by the 9th Circuit, and second, that Pacific Bell has not established that the audit materials fall within the scope of such a privilege.

Regarding plaintiffs' request for documents dated from the period after plaintiffs ceased doing business until the present, the court finds that these documents are relevant to Pacific Bell's cost allocation practices, specifically to the issue of whether Pacific Bell has been subsidizing its inside wire business through money from its ratepayers.

In accordance with the foregoing,

IT IS HEREBY ORDERED

that Pacific Bell produce, no later than the close of business on September 25, 1992, 1) all documents relating to FCC filings in which inside wire is a *central or significant issue*, including any supporting documents that were provided to the FCC in connection with the audits required by the Joint Cost Order; and 2) requested documents dated from the period after plaintiffs ceased doing business until the present.