**Ann PRICE, an individual; Ann Price, as Guardian ad Litem of Benjamin Price, a Minor and Unborn Baby Price, a Minor in Utero; Robert Price; Margaret Price and the Estate of Daniel L. Price, deceased, through its Administrator, Ann Price, Plaintiffs,**

v.

**COUNTY OF SAN DIEGO; John Groff; Steven Clause; Mark Talley; Jim Roache; and Does 1–50, inclusive, Defendants.**

Civ. No. 94–1917 R(AJB).

United States District Court, S.D. California.

April 2, 1996.

---

Charles R. Woods, Trost, Street, Woods and Messina, San Diego, CA, for plaintiffs.

Ricky R. Sanchez, County of San Diego, San Diego, CA, for defendants.

### Order Re: Discovery

BATTAGLIA, United States Magistrate Judge.

In order to resolve disputes with regard to the discoverability of certain allegedly privileged documents sought by both Plaintiffs and Defendants, the Court Ordered both parties to submit the disputed documents for *in camera* review, along with letter briefs outlining the claims of privilege. The disputed documents have now been reviewed by the Court *in camera*. Based upon the *in camera* review, for the reasons set forth below, the Court hereby:

1. Denies the Defendants' claim of self-critical analysis privilege as to the documents submitted by Defendants;

2. Grants in part and denies in part the Defendants' claim of deliberative process privilege;

3. Grants the Defendants' claim of official information privilege as to the investigative file regarding Deputy Groff; and

4. Denies the Plaintiffs' claim of psychotherapist-patient privilege as to Ann Price's psychological records.

Plaintiffs and Defendants are hereby Ordered to produce all non-privileged documents within ten (10) days of this Order.

### Discussion

This suit under 42 U.S.C. § 1983 concerns the alleged wrongful death of Daniel Price, after being hogtied[1] by Defendant Officers. Among the claims raised in the Complaint, Plaintiffs Ann Price and Benjamin Price claim damages against Defendants for loss of support, as well as care, comfort, society and affection (i.e. loss of consortium).

Defendants assert a privilege of self-critical analysis and/or deliberative process with regard to certain documents obtained by or relied upon by the San Diego County Sheriff's Department in formulating policies regarding hogtying. Defendants also assert the official information privilege as to an investigative file regarding an accidental shooting by Deputy Groff approximately one year prior to the incident underlying this case. Plaintiffs assert the psychotherapist-patient privilege as to the psychological records of Plaintiff Ann Price. Each of these assertions of privilege are addressed below.

### A. Documents Regarding Hogtying

#### 1. Self-Critical Analysis Privilege

■ Defendants claim that the documents submitted with regard to hogtying are privileged from discovery under the self-critical analysis privilege. Pursuant to Rule 501 of the Federal Rules of Evidence, in cases in which federal law governs, the applicability of privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." As such, the only privileges which exist in federal question cases are those which have been established through the federal common law. The Supreme Court has held that because of the federal court's expansive view of discov-

---

1. The term hogtying refers to a restraining technique where a person's hands and feet are se-

cured together behind the back.

ery, privileges are to be "strictly construed." *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990).

 Some federal courts have recognized the existence of a privilege against disclosure of "self-critical" materials. *Granger v. National Railroad Passenger Corp.*, 116 F.R.D. 507 (E.D.Pa.1987) (accident analysis and committee recommendations portions of post-accident report were not discoverable, while portions of the report addressing cause and contributing factors were discoverable). Such a privilege has been discussed in relation to a hospital's evaluations of its clinical practices, and to bar discovery of an employer's equal opportunity goals, policies, and affirmative action plans. *Id.* at 508–09. In order to be entitled to the protection provided by the self-critical analysis privilege, the material must satisfy three criteria: "first, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed." *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir.1992). Of course, documents will not be entitled to any privilege unless those documents were prepared with the expectation that they would be kept confidential and have, in fact, been kept confidential. *Id.*

The Ninth Circuit was specifically provided with the opportunity to determine whether the federal common law contains a privilege for self-critical analysis in *Dowling*. In that case, plaintiff was denied discovery of safety committee meeting minutes. Specifically, the trial court found that plaintiff was entitled to voluntarily disclosed excerpts of those meetings and questions to witnesses regarding "any objective evidence" relating to the roller chock which was alleged to be the cause of the plaintiff's injuries. *Id.* at 425. However, the court withheld from plaintiff, under the self-critical analysis privilege, any information which "delve[d] into the minds of the safety committee members or the under-lying operations of the safety committee." *Id.* Upon appeal the Ninth Circuit held that the trial court erred in finding that such minutes were immune from discovery, and granted plaintiff a new trial.

The court held that "no privilege of 'self-critical analysis' protects routine internal corporate reviews of matters related to safety concerns." *Id.* at 426. The court, however, distinguished routine safety reviews from "investigations designed to root out the causes of an accident that has already occurred," finding that there was a strong policy objective which supported protection of post-accident investigations. *Id.* at 427. By contrast, "it is perverse to assume that the candid assessments necessary to prevent accidents will be inhibited by the fear that they could later be used as a weapon in hypothetical litigation they are supposed to prevent." *Id.* As the court points out, Rule 407 of the Federal Rules of Evidence seems to recognize a distinction between pre- and post-accident analysis, by barring only evidence of subsequent remedial measures to prove negligence.

 Following *Dowling*, several district courts in California have expressed doubt about the existence of a self-critical analysis privilege, or refused to apply it to the facts presented in those cases. *See T.W.A.R., Inc. v. Pacific Bell*, 145 F.R.D. 105, 108 (N.D.Cal. 1992) (in antitrust suit against telephone company, court held documents relating to compulsory FCC filings were discoverable, finding that the Ninth Circuit had not recognized a self-critical analysis privilege and that even assuming the existence of such a privilege, defendant had not established that the materials were within the scope of the privilege); *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 692 (E.D.Cal.1993) (self-critical analysis privilege cannot be claimed as to documents of peer review committee in antitrust action alleging peer review process is used to exclude physician from group because the self-analysis itself is under attack); *Griffith v. Davis*, 161 F.R.D. 687, 701 (C.D.Cal.1995) (court declined to apply self-critical analysis privilege to memorandum prepared by the IRS in the course of its investigation of the incident underlying the

lawsuit, holding that the Ninth Circuit has not recognized a privilege for self-critical analysis and that the rationale underlying such a privilege is questionable); *Soto v. City of Concord,* 162 F.R.D. 603, 611 (N.D.Cal. 1995) (court declined to apply self-critical analysis privilege to shield discovery of internal affairs investigatory documents and witness statements, finding no reason to believe that shielding the investigatory process from the public would lead to any increased candor by subject officers); *United States ex rel. Burns v. Family Practice Associates of San Diego,* 162 F.R.D. 624, 627 (S.D.Cal.1995) (without discussing the viability of the self-critical analysis privilege, the court declined to shield from discovery a report submitted to the Department of Justice by the defendant during the course of the Department's investigation because defendants had not presented any evidence tending to show that the report would fall within the scope of a self-critical analysis privilege). Even where a self-critical analysis privilege has been held to exist, in other Circuits, that privilege is clearly limited to expressions of opinion or recommendations, and not to facts underlying such opinions or recommendations. *Granger,* 116 F.R.D. 507, 510 (E.D.Pa.1987).

Defendants claim in their letter brief and supporting declaration of Richard Pinckard, Special Assistant to the San Diego County Sheriff, that the documents submitted for *in camera* review should be protected by the self-critical analysis privilege because of the need for a free flow of information regarding police procedures and criticisms of those procedures. Mr. Pinckard's declaration clarifies that all of the documents for which privilege is claimed were generated and maintained in the strictest confidence. Defendants also argue that the documents are not necessary for Plaintiff's burden of proof on any issue in this case. The Court finds, however, that the claim of self-critical analysis privilege cannot stand as to any of the documents submitted by Defendants for *in camera* review regarding hogtying.

As discussed above, the Ninth Circuit in *Dowling* clearly held that the self-critical analysis privilege, if it exists, does not apply to routine internal reviews of matters related to safety concerns. Upon review of the documents submitted by Defendants, none of the documents are in the nature of investigation of a particular event of hogtying which lead to death or other injury to an arrestee. Rather, the documents reflect a process by the County, following the City of San Diego's Task Force Report on Custody Deaths, to address possible suffocation resulting from arrestees being hogtied. The Ninth Circuit's holding in *Dowling* directly prohibits the application of a self-critical analysis privilege to these documents.

In addition, Plaintiff has asserted a cause of action for supervisory and municipal liability under *Monell.*[2] Information contained in these documents, reflecting the prior knowledge of the County that hogtying could lead to suffocation and even death, would be directly relevant to showing a deliberate indifference by the Sheriff's Department of such possible consequences. Therefore, the claim of self-critical analysis privilege as to all of the documents submitted by the Defendants for *in camera* review is hereby rejected.

### 2. Deliberative Process Privilege

■ The deliberative process privilege is a sub-category of the executive or governmental privilege. *J.R. Norton Co., Inc. v. Arizmendi,* 108 F.R.D. 647, 648 (S.D.Cal.1985). It "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising a part of a process by which government decisions and policies are formulated." *Federal Trade Commission v. Warner Communications, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984). The ultimate purpose of the privilege is to ensure the quality of agency decisions, by promoting frank and independent discussion among those responsible for governmental decision-making. *Id.*

2. *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* holds that a local governmental unit may be held liable under 42 U.S.C. § 1983 only where the constitutional deprivation arises from a governmental custom, policy, or practice.

■ In order to avoid discovery on the basis of the deliberative process privilege, a document must meet two requirements: (1) the document must be predecisional—it must have been generated before the adoption of the agency's policy or decision; and (2) the document must be deliberative in nature, containing opinions recommendations, or advice about agency policies. *Id.* The privilege is to be narrowly applied. *J.R. Norton Co.,* 108 F.R.D. at 648. Purely factual material, as well as summaries or commentaries on past decisions or investigations are not protected. *Id.* at 649; *Warner Communications,* 742 F.2d at 1161.

■ Even if the deliberative process privilege applies, its protections are qualified—a litigant may obtain discovery of materials protected by the privilege if the need for the materials outweighs the governmental interest in keeping the decision-making process confidential. *Warner Communications,* 742 F.2d at 1161. In deciding whether to override the privilege claim and allow discovery, there are four factors to be considered: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

■ As discussed above with regard to the clam of self-critical analysis privilege, Defendants have submitted the declaration of Richard Pinckard to support their claim that these confidential documents should be protected from discovery in order to allow the free flow of information regarding policies and procedures. The Court has weighed Defendants' asserted rationale for withholding the documents submitted from discovery as privileged, against the factors set forth in *Warner Communications.* In so doing, this Court finds that certain of the documents are highly relevant to Plaintiffs' claims of liability, especially under the *Monell* cause of action against the Defendant County of San Diego. In addition, the Court is convinced that the infringement upon the frank and independent discussions regarding contemplated policies and decisions of the County with regard to hogtying, caused by disclosure

of these documents, can be alleviated through the use of a strict protective order against use or dissemination of the materials outside of this lawsuit.

Therefore, the Court grants Defendants' claim of deliberative process privilege as to documents G, J, L, M, O, P, and R regarding hogtying. The Court denies Defendants' claim of deliberative process privilege and orders Counsel for Defendants to produce to Plaintiffs, within ten (10) days of this Order, full and complete copies of documents A, B, C, D, E, F, I, N, and Q. In addition, Counsel for Defendants is ordered to produce to Plaintiffs, within ten (10) days of this Order, the portions of documents H and K related to positional asphyxia. The Court is returning to the County the copy of the documents lodged with it for *in camera* review, with the portions of documents H and K which it believes are properly redacted as unrelated to positional asphyxia highlighted.

### File Regarding Prior Accidental Shooting by Deputy Groff

■ Defendants have asserted that the documents regarding a prior accidental shooting by Deputy Groff should be withheld from discovery based upon 5 U.S.C. § 552(b)(7). That section exempts from disclosure under the Freedom of Information Act those documents or records which would essentially be protected under the federal common law official information privilege. The Freedom of Information Act only applies, however, to authorities of the "Government of the United States, whether or not it is within or subject to review by another authority. . . ." 5 U.S.C. § 551. The Court will treat Defendants' assertion of privilege under this section as an assertion of the official information privilege.

■ The federal common law recognizes a privilege for "official information." *Sanchez v. City of Santa Ana,* 936 F.2d 1027 (9th Cir.), *cert. denied* 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991). Because this privilege is based upon the state's interest in protecting against public disclosure of sensitive information, courts examining a claim of privilege will balance the plaintiff's interest

in disclosure against the government's interest in keeping the information secret. *Youngblood v. Gates,* 112 F.R.D. 342, 344 (C.D.Cal.1985).

■ There are ten factors generally considered by the courts in balancing the interests of law enforcement agencies against the plaintiff's interest in disclosure:

1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

2. The impact upon persons who have given information of having their identifies disclosed;

3. The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure;

4. Whether the information sought is factual data or evaluative summary;

5. Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

6. Whether the police investigation has been completed;

7. Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation;

8. Whether the plaintiff's suit is non-frivolous and brought in good faith;

9. Whether the information sought is available through other discovery or from other sources; and

10. The importance of the information sought to the plaintiff's case.

*Kelly v. City of San Jose,* 114 F.R.D. 653, 663 (N.D.Cal.1987). Because of the liberal discovery policies of the Federal Rules of Civil Procedure, the importance placed upon the vindication of federal civil rights, and the protections against full-scale disclosure which may be imposed by the court (i.e. strict protective orders), the weighing of interests surrounding the assertion of an official information privilege is moderately tipped in favor of disclosure. *Id.* at 661–62.

■ A defendant seeking to avoid discovery by asserting the official information privilege must make a specific claim of the rationale of the claimed privilege. *Kerr v. United States District Court,* 511 F.2d 192 (9th Cir. 1975) *aff'd on procedural grounds,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). Counsel for defendant may not make a blanket assertion of the official information privilege in response to discovery requests. Rather, the responsible official within the agency who has personal knowledge regarding the materials must submit a declaration or affidavit including: (1) an affirmation that the agency has collected the material in question and held it in confidence; (2) an affirmation that the official has reviewed the material; (3) a specific assertion of the governmental or privacy interests which would be threatened by disclosure of the material to plaintiff and/or plaintiff's attorney; (4) a specific explanation of the substantial risk of harm to governmental or privacy interests which would result from a disclosure of the material to plaintiff and/or plaintiff's attorney; and (5) an estimation of the amount of harm which would be done to the threatened governmental or privacy interests by disclosure of the material to plaintiff and/or plaintiff's attorney. *Kelly,* 114 F.R.D. at 670; *see also Kerr,* 511 F.2d at 198; *Miller v. Pancucci,* 141 F.R.D. at 300; *Chism v. County of San Bernardino,* 159 F.R.D. 531 (C.D.Cal. 1994). The declaration of Richard Pinckard, filed by Counsel for Defendants contains the appropriate information to allow Defendants to invoke the official information privilege against the disclosure of the documents here concerned.

Upon review of the file regarding the shooting it is eminently apparent that all indications were that Deputy Groff's discharge of his weapon was accidental. There is no relevance of this accidental shooting to the incident in this case, as it in no way shows any tendency toward violent or brutal behavior on the part of Deputy Groff. Any marginal relevance this incident may have to the present case is outweighed by the privacy interests of the victim, the other suspect, the other officers, and Deputy Groff. Therefore, the file with regard to Deputy Groff's

accidental shooting is protected from discovery by the official information privilege.

### Psychological Treatment Documents Re: Ann Price

Plaintiffs seek to withhold from discovery the psychological treatment records from Dr. Paul Swigart, Dr. Jerri Michael, and National Resource Consultants, regarding Plaintiff Ann Price, by asserting the psychotherapist-patient privilege. Plaintiffs argue that the psychological records of Ms. Price also are not discoverable because although Plaintiffs have made a claim for loss of consortium in this case, Ms. Price has specifically waived any claim for extraordinary emotional distress or psychological damages.

■ The Ninth Circuit, and no district court within the Ninth Circuit, has ever explicitly recognized a federal common law privilege for psychotherapist-patient communications in a civil action. For cases discussing the psychotherapist-patient privilege in a criminal context *see In re Grand Jury Proceedings*, 867 F.2d 562, 565 (9th Cir.1989); *Smith v. McCormick*, 914 F.2d 1153, 1160 (9th Cir.1990). However, in *Caesar v. Mountanos*, 542 F.2d 1064, 1067 fn. 9 (9th Cir. 1976) the Ninth Circuit rejected a Constitutional challenge to California's litigant-patient exception to the statutory psychotherapist-patient privilege,[3] while noting that the right to privacy, as envisioned under *Griswold*[4] and *Roe v. Wade*[5] would extend to psychotherapist-patient communications. The court went on to decide that despite the privacy right involved, the psychotherapist-patient privilege could be abridged by a litigant raising, through a lawsuit, an issue as to his or her psychological state. This Court finds that there is a federal common law privilege for psychotherapist-patient communications, in the context of the right to privacy, but that such privilege is qualified. Where a patient-litigant has raised an issue as to his or her psychological state, the privilege will be waived. Similarly, where the privileged information is relevant to the claims raised by a patient-litigant, and the relevance outweighs the privacy interest, the privilege will be waived.

■ Defendants argue that Ms. Price's psychological history is sufficiently in controversy so as to comprise good cause for discovery of the records. Defendants seek Ms. Price's psychological history because she has made a claim for loss of consortium, which places information regarding the marital relationship at issue. The character of the relationship between Ms. Price and her husband, (Daniel Price) is relevant to the issue of damages for the loss of care, comfort and society claimed by Ms. Price. The mental or emotional state of the relationship (i.e. the state of affection or dislike, happiness or unhappiness) is an issue affecting damages in this wrongful death action.

Defendants also argue that Ms. Price, during her deposition, denied drug involvement and counseling, denied knowledge of Daniel Price's drug use at the time of the incident underlying this case, and denied having any significant marital difficulties. Defendants have discovered, through Daniel Price's psychological records and the deposition of Ms. Price's sister, that Ms. Price's representations regarding these issues were not completely accurate.

Plaintiffs argue, however that Ms. Price's psychological state is not in issue, so as to make the psychological records of Ms. Price discoverable, because Ms. Price has waived any claim to extraordinary emotional distress or psychological damages. By making this argument, the Court assumes Plaintiffs are attempting to rely on case law addressing the appropriateness of a mental health examination under Fed.R.Civ.P. 35(a). It is true that a mental health examination under Rule 35(a) is not appropriate unless Plaintiff makes a claim for "mental injury" which goes

---

3. Cal.Evid.Code § 1014 contains California's psychotherapist-patient privilege. Pursuant to the California Code, any privilege is waived as to any otherwise privileged psychotherapist-patient communication where an issue concerning the mental or emotional condition of the patient has been tendered by the patient. § 1016.

4. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

5. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

beyond the ordinary claims of humiliation, mental anguish, and emotional distress. *Turner v. Imperial Stores, Inc.,* 161 F.R.D. 89 (S.D.Cal.1995). However, Plaintiffs have cited no case law which would suggest that because the emotional distress is only "ordinary", the opposing party is not entitled to at least discovery of any existing psychological records. The invasion of privacy occasioned by allowing opposing counsel to obtain copies of a plaintiff's psychological records, where there is a claim of ordinary mental distress, is exceedingly less burdensome than a Rule 35(a) examination. Therefore, the Court does not find that discovery of psychological records is governed solely by the same "at issue" standard as under Rule 35(a). Rather, as here, the issues raised by the Plaintiffs and the relevance of the information govern the discoverability of the otherwise privileged information.

Ann Price's psychological records have been placed at issue in this case as a result of Plaintiffs' claim for loss of consortium and Ms. Price's alleged inaccuracy of recollection regarding certain issues. Upon *in camera* review of Ann Price's psychological records submitted for that purpose, the Court finds that they are certainly relevant to the issues in this case. Therefore, the Court finds that the psychotherapist-patient privilege has been waived. Plaintiffs are ordered to provide Defendants with a copy of the psychological records within ten (10) days of this Order.

### Conclusion

Based upon the foregoing, the Court hereby Orders as follows:

1. Defendants shall produce to Plaintiffs, within ten (10) days of this order, full and complete copies of documents A, B, C, D, E, F, I, N, and Q regarding hogtying;

2. Defendants shall produce to Plaintiffs, within ten (10) days of this order, redacted copies of documents H and K regarding hogtying, as indicated by the Court;

3. Plaintiffs shall produce to Defendants, within ten (10) days of this order, a full

and complete copy of Ann Price's psychological records; and

4. The documents produced by parties pursuant to this order shall not be used by any party outside the scope of this litigation, nor shall such documents be disseminated to any person not a party to, or representing or acting on behalf of a party to, this litigation.

IT IS SO ORDERED.

Dated: April 2, 1996.