**Marcia K. DENISON, Plaintiff,**

v.

**State of OREGON; John Kitzhaber, Governor; Oregon Department of Forestry; and James E. Brown, State Forester, Defendants.**

CV–02–652–ST.

United States District Court, D. Oregon.

Sept. 13, 2002.

David E. Leith, Department . of Justice, Salem, OR, for defendants.

## OPINION AND ORDER

STEWART, United States Magistrate Judge.

Plaintiff, Marcia K. Denison, filed this action on May 21, 2002, against the State of Oregon, the Oregon Department of Forestry ("ODF"), Oregon's Governor, John Kitzhaber, and State Forester, James E. Brown ("Brown"). Plaintiff alleges violations of the Endangered Species Act ("ESA"), 16 USC §§ 1531–44. She also alleges violations of the Oregon Unfair Trade Practices Act and Antitrust laws, as well as four state policy statements concerning water quality protection and pollution control, minimum stream flows, forest practices act, and wildlife. The thrust of her case is that defendants have effected unlawful takings of threatened birds

and fish by a variety of means including modifying and poisoning their habitat and harassing them, and have unlawfully engaged in property exchanges in an effort to bypass their obligations under federal and state law.

On July 29, 2002, plaintiff filed a Motion to Compel Discovery (docket # 15) of a number of documents and tapes which defendants refused to produce or agreed to produce only on conditions unacceptable to plaintiff. At a scheduling conference on August 12, 2002, this court resolved most of the discovery dispute between the parties. As a result, the only remaining issue is whether defendants must produce documents, referred to as "call response circle maps," describing the specific locations of threatened northern spotted owls, as well as maps of the locations of marbled murrelet nests detected by visual and climbing surveys.

Plaintiff contends that in order to track the decrease in nest sites and population of the listed species due to the timber sales and logging operations allowed by defendants, she needs the maps to show how many call response circles there were, how many there still are, and which ones have moved. Although relevant, defendants object to disclosing documents describing the locations of listed species pursuant to the qualified privilege for "official information."

Pursuant to FRCP 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." One privilege under federal common law is a qualified privilege for "official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.), *cert denied*, 502 U.S. 957, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991). This privilege "is based upon the state's interest in protecting against public disclosure of sensitive information." *Price v. County of San Diego*, 165 F.R.D. 614, 620 (S.D.Ca.1996). In examining this privilege, courts "balance the plaintiff's interest in disclosure against the government's interest in keeping the information secret." *Id.* at 620–21. This weighing of interests "is moderately tipped in favor of disclosure" due to liberal discovery rules, the importance of vindicating federal civil rights, and the availability of protective orders. *Id.* at 621, citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 663 (N.D.Cal.1987).

■ To assert the "official information" privilege, the responsible official within the agency who has personal knowledge regarding the material must submit a declaration that: (1) affirms that the agency has collected the material and held it in confidence; (2) affirms that he or she has reviewed the material; (3) specifically asserts the governmental or privacy interest which would be threatened by disclosure of the material; (4) specifically explains the substantial risk of harm to those interests which would result from disclosure; and (5) estimates the amount of harm which would result from disclosure. *Id.*, citing *Kerr v. United States Dist. Court for the N.D. of Cal.*, 511 F.2d 192, 198 (9th Cir.1975).

■ To assert the "official information" privilege, defendants have submitted the Amended Affidavit of James E. Brown ("Brown Aff") who has reviewed the requested materials. He states that pursuant to ORS 192.501(13),[1] the ODF holds in confidence documents describing the specific locations of northern spotted owls, marbled murrelets and other threatened or endangered species. Brown Aff., ¶ 3. According to an ODF policy, such documents are disclosed only to those who "need to know" in order to assist with ESA compliance, which includes adjacent landowners or prospective buyers. *Id.*, ¶ 3 & Exhibit 1. Other requests are considered on a case-by-case basis. *Id.* Applying that policy, the ODF has disclosed such documents not only to adjacent landowners or prospective buyers, but also when necessary for academic or other scientific research projects and to private, nonprofit groups for analytical purposes related to conservation of a species. *Id.* at ¶ 4. Any party to whom such documents are released must sign an Agreement for Release of Biological Information. *Id.* at ¶ 5. Similar to a protective order, that Agreement allows use of the information only for specific purposes and allows sharing of the information only to persons within the recipient's organization

who have a need to know the information in connection with the permitted purpose under threat of payment of actual damages or, if actual damages are uncertain or less than $5,000, liquidated damages of $5,000. *Id.*, Exhibit 2. Mr. Brown states that disclosure of the materials to the plaintiff would threaten the state's interest in the protection of its wildlife. *Id.* at ¶ 6. Disclosure of the locations of northern spotted owls and marbled murrelet nests to the public could intentionally or unintentionally harm those species. *Id.*

Plaintiff responds that she has previously obtained "call response circle maps" of the northern spotted owl from the United States Fish and Wildlife Agency, that Weyerhauser Survey Reports show the pinpoint locations of nest sites, and that nest sites and population numbers are fairly available from auction catalogs.[2] Given the public availability of such information, she doubts any need for secrecy by the ODF for the same information. She also states that she does not require pinpoint locations, but only requires approximate locations for purposes of tracking changes over time and confirming the locations alleged in her Complaint and notices. Additionally, she notes that she is trying to protect the listed species, not harm them, and that ODF's surveys are themselves harmful to the species by frightening away the birds and damaging the nests. Finally, she states that if provided the information, she will not share it with anyone other than the court, a lawyer and experts when hired.

The requested information would provide a roadmap to the homes of protected species which, if in the hands of the general public, would pose a substantial risk of potential harm to the public interest. However, this potential harm does not outweigh plaintiff's interest in disclosure. She requires the information to establish her claim(s) which seek to promote conservation of the threatened species. In that regard, plaintiff and the ODF have the same interest, except that plaintiff contends that defendants are not

---

1. ORS 192.501(13) exempts from disclosure under the Oregon Public Records Law "[i]nformation developed pursuant to ORS 496.004, 496.172 and 498.026 or ORS 496.192 and 564.100, regarding the habitat, location or population of any threatened species or endangered species."

2. It is not clear how she obtained the survey reports and what auction catalogs are.

taking sufficient action to promote that interest. Most importantly, plaintiff does not intend to disseminate this information to the public, but has offered to share the information only with the court, her lawyer and experts. This court has no reason to believe that plaintiff will not abide by such an agreement.

Therefore, this court declines to shield production of the requested documents pursuant to the "official information" privilege if plaintiff signs a protective order similar to the Agreement for Release of Biological Information.

### ORDER

For the reasons set forth above, plaintiff's Motion to Compel Discovery (docket # 15) is GRANTED and defendants shall produce documents referred to as "call response circle maps," describing the specific locations of threatened northern spotted owls, as well as maps of the locations of marbled murrelet nests, within 10 days after plaintiff signs a protective order limiting the disclosure of such documents to this court and to her lawyer and experts.